IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MYRIAM P. TOMEI, | ) | |
| | ) | |
| PLAINTIFF, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| TRINITY FINANCIAL SERVICES, LLC | ) | |
| | ) | |
| DEFENDANT. | ) | <u>Jury Demanded</u> |

## COMPLAINT

Plaintiff, Myriam P. Tomei, brings this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), for a finding that Defendant's debt collection actions violated the FDCPA, and to recover damages for Defendant's violations of the FDCPA, and alleges:

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to § 1692k(d) of the FDCPA, and 28 U.S.C. § 1331.

2. Venue is proper in this District because parts of the acts and transactions occurred here and Defendant transacts substantial business here.

## PARTIES

3. Plaintiff, Myriam P. Tomei ("Plaintiff"), is a resident of the State of Illinois, from whom Defendant attempted to collect an allegedly delinquent consumer debt allegedly owed to another unknown creditor. Plaintiff is thus a consumer as that term is defined in 15 U.S.C. § 1692a(3) of the FDCPA.

4. Defendant Trinity Financial Services, LLC ("TFS") is a California limited liability company that does or transacts business in Illinois. Its registered office and agent is Illinois Corporation Service C, which can be found at 801 Adlai Stevenson Drive, Springfield, IL 62703. (Exhibit A, Record from Illinois Secretary of State).

5. TFS is licensed by the Illinois Department of Financial and Professional Regulation as a licensed collection agency in Illinois. (Exhibit B, Record from Illinois Department of Financial and Professional Regulation).

6. TFS is a debt scavenger that specializes in buying large portfolios of defaulted consumer debts and or non performing second mortgages for pennies on the dollar, the full amount of which it then tries to collect.

7. Thus, TFS acts as a debt collector, as defined by § 1692a(6) of the FDCPA, because it regularly uses the mails and/or the telephone to collect, or attempt to collect, directly or indirectly, defaulted consumer debts from consumers in virtually every state, including consumers in Illinois.

## FACTUAL ALLEGATIONS

8. Plaintiff incurred a debt for a second mortgage on her residential home, which originated, upon information and belief, with GMAC Mortgage ("alleged debt"). The alleged debt is thus a "debt" as that term is defined by §1692a(5) of the FDCPA.

9. Due to overwhelming debt obligations and a deteriorating financial situation, Plaintiff was unable to pay the alleged debt, and it went into default.

10. On or about November 9, 2012, as a result of her deteriorating financial situation, and a pending residential foreclosure matter, Plaintiff filed a Voluntary Petition for Chapter 7

Bankruptcy in the US Bankruptcy Court for the Northern District of Illinois, Case Number 12-44550.

11. Plaintiff filed the petition under the name "Myriam Murphy f/k/a Myriam Tomei," and included this identification on subsequent filings made with the Bankruptcy Court and communications with her creditors.

12. Plaintiff listed GMAC Mortgage on her list of creditors and gave proper notice of the Creditors 341 Conference to them on or about November 15, 2012. GMAC did not object to the petition for bankruptcy.

13. On February 20, 2013, Plaintiff was granted a discharge under section 727 of Title 11, U.S.C. and notice of the discharge was provided by the Bankruptcy Noticing Center via USPS First-Class mail to GMAC.

14. TFS later purchased the debt at some time after it had entered default and, upon information and belief, after it had been discharged in Plaintiff's bankruptcy filing.

15. In or around February 24, 2015, Plaintiff began negotiations with the first mortgagee, Federal National Mortgage Association ("FNMA") of her residential property to explore loss mitigation opportunities, ultimately electing to pursue a deed in lieu of foreclosure ("DIL").

16. Thereafter, in or around March 15, 2015, Plaintiff began receiving letters from TFS concerning the second mortgage on her residential property—a mortgage that is wholly unsecured against the property as a result of the first lienholders interest and the drastic reduction in the fair market value of Plaintiff's property following the 2008 real estate market collapse.

17. In order to effectuate a DIL with FNMA, Plaintiff must have been able to transfer good and marketable title to FNMA. This would require, inter alia, acquiring secondary mortgage lien release, and clearing judgment liens from title.

18. On or about August 5, 2015, Plaintiff, through her Attorney, Robert J. Tomei Jr., contacted TFS at (855) 818-6806 to inquire whether TFS would be interested in entering into mortgage lien release payoff negotiations with the Plaintiff and FNMA.

19. A letter of representation was subsequently provided to TFS via electronic mail transmission, at the direction and request of TFS representatives, to "lossmit@trinityfs.com." (Exhibit C, Letter of Representation to TFS).

20. Subsequently, Plaintiff's Attorney had contact with TFS representatives and or TFS's Attorney by means of email transmission, teleconference calls, including a mediation conference, and US Priority Mail no less than twenty (20) times between the date of initial contact, August 5, 2015, and January 25, 2016.

21. In fact, in order to remove two judgment liens on title, Plaintiff, through counsel, on or about November 16, 2015, filed a Motion to Re-open her Bankruptcy, providing a Notice of Motion to all interested parties, via USPS First-Class mail, including FNMA, and TFS. (Exhibit D, Notice of Motion to Re-Open Bankruptcy and Avoid Judgment Liens)

22. Thus, TFS knew or should have known that Plaintiff had filed bankruptcy, that there was a discharge injunction in place and that Plaintiff was represented by an attorney because, in addition to communicating with her attorney for the DIL negotiations, and receiving a Notice of Motion to Reopen Plaintiff's bankruptcy, the bankruptcy filing would have been noted on any documents TFS received from GMAC upon transference of the account.

23. Despite having actual knowledge that Plaintiff had declared bankruptcy and was represented by an attorney, through U.S. First Class Mail, TFS sent numerous, very similar, collection letters to the Plaintiff directly at her residential address, including a letter on or about February 12, 2016 ("Letter"). (Exhibit E, Collection Letter).

24. TFS subsequently mailed no less than three exact letters, with the exception of the interest rate accrual, following the February 12, 2016 collection letter to the Plaintiff.

25. The Letter conveyed information regarding the account directly to Plaintiff, including the identity of the creditor, an account number, and the alleged balance due.

26. Thus, the Letter was a communication as that term is defined at §1692a(2) of the FDCPA.

27. The Letter informed Plaintiff that "Although we [TFS] have made numerous attempts, we have received no payments from you. We would like the opportunity to discuss the alternatives available to you to avoid further collection actions and resolve this matter."

28. The Letter additionally stated "Please see your current account information below:

| ACCOUNT PRINCIPAL | ACCRUED INTEREST | ACCOUNT BALANCE |
|---|---|---|
| $37,249.52 | $27,416.42 | $64,665.94" |

29. The letter furthermore stated that:

**OUR RECORDS INDICATE THAT YOU PREVIOUSLY RECEIVED A BANKRUPTCY DISCHARGE. THIS SOLELY RELATES TO THE LIEN OF THE MORTGAGE OR DEED OF TRUST AND SHOULD NOT BE CONSTRUED AS AN ATTEMPT TO COLLECT A PERSONAL DEBT FROM YOU OR IN ANY WAY TO BIND YOU PERSONALLY FOR THE DEBT. THE LENDER IS ONLY EXERCISING ITS RIGHTS AGAINST THE PROPERTY.**

30. At the time that the Letter was sent, the original debt had been discharged and Plaintiff no longer owed it.

31. 15 U.S.C. § 1692e of the FDCPA provides as follows:

**False or misleading representations**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

    **(2) The false representation of—**

        **(A) the character, amount, or legal status of any debt; or**

        **(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt. . .**

    **(5) The threat to take any action that cannot legally be taken or that is not intended to be taken…**

    **(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

32. By paradoxically urging Plaintiff to enter into "discussions" to avoid further "collection actions," and stating Plaintiff had a "current account balance" and "monthly payment" obligation whilst repudiating homeowner personal liability with a bankruptcy disclaimer, Defendant falsely represented that the debt was otherwise legally actionable and could result in litigation, or would result in litigation when Defendant did not intend to take such legal action, in violation of §1692(e)(2)(A), §1692(e)(5), §1692(e)(10)

33. 15 U.S.C. § 1692f of the FDCPA provides as follows:

**Unfair practices**

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**. . . (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. . .**

34. TFS violated 15 U.S.C. §§1692f and 1692f(1) by attempting to collect an alleged debt from Plaintiff when TFS had no legal right to collect it.

35. 15 U.S.C. §1692c(a)(2) of the FDCPA provides as follows:

> **If the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer…**

36. TFS violated §1692c(a)(2) when it contacted Plaintiff by mailing her monthly "account statements," even though it could have readily ascertained that she was represented by an attorney, as it had been corresponding and entering into teleconference negotiations with her attorney.

37. Plaintiff had been assured by her attorney that her creditors and debt collectors would cease communicating with her directly when she filed her petition for bankruptcy, and Plaintiff was hopeful that she would be able to avoid the frequent and persisting receipt of collection letters from debt collectors when she filed bankruptcy.

38. Plaintiff suffered emotional distress, annoyance, aggravation and inconvenience due to Defendant's repeated communications by providing monthly "account statements."

39. Defendants' collection communications are to be interpreted under the "unsophisticated consumer" standard. *See Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

## COUNT I-FAIR DEBT COLLECTION PRACTICES ACT

40. Plaintiff re-alleges above paragraphs as if set forth fully in this count

41. By paradoxically urging Plaintiff to enter into "discussions" to avoid further "collection actions," and stating Plaintiff had a "current account balance" and "monthly

payment" obligation whilst repudiating homeowner personal liability with a bankruptcy disclaimer, Defendant falsely represented that the debt was otherwise legally actionable and could result in litigation, or would result in litigation when Defendant did not intend to take such legal action, in violation of §1692(e)(2)(A), §1692(e)(5), §1692(e)(10)

42. TFS violated 15 U.S.C. §§1692f and 1692f(1) by attempting to collect an alleged debt from Plaintiff when TFS had no legal right to collect it.

43. TFS violated §1692c(a)(2) when it contacted Plaintiff by mailing her monthly "account statements," even though it could have readily ascertained that she was represented by an attorney, as it had been corresponding and entering into teleconference negotiations with her attorney.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants as follows:

      A.    Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

      B.    Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2);

      C.    Costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3); and

      D.    Such other or further relief as the Court deems proper.

## JURY DEMAND

Plaintiff demands trial by jury.

Respectfully Submitted,

By:    s/ *Robert J. Tomei Jr.*
One of Plaintiff's Attorneys

Robert J. Tomei Jr.
Attorney at Law
223 N Riverside Dr. (Rt. 21), Suite 14
Gurnee, IL 60031
Tele: (847) 596-7494

Fax: (847) 589-2263
www.TomeiLawFirm.com
Robert@TomeiLawFirm.com

## DOCUMENT PRESERVATION DEMAND

    Plaintiff hereby demands that defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

    By:    s/ *Robert J. Tomei Jr.*
    One of Plaintiff's Attorneys

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

    By:    s/ *Robert J. Tomei Jr.*
    One of Plaintiff's Attorneys